UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

December 31, 2019

LETTER TO COUNSEL

      RE: *Helene C. v. Commissioner, Social Security Administration*
           Civil No. DLB-18-2938

Dear Counsel:

On September 21, 2018, Plaintiff Helene C. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment, and Plaintiff's reply. ECF 14, 17, 20. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed her claims for benefits on January 4, 2016, alleging a disability onset date of December 13, 2015. Tr. 227-35. Her claims were denied initially and on reconsideration. Tr. 122-29, 135-43. A hearing was held on May 30, 2017, before an Administrative Law Judge ("ALJ"). Tr. 36-60. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 16-29. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "lumbar disc disorder with chronic pain syndrome, migraine headaches and obesity." Tr. 18. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations. The claimant is able to lift up to 20 pounds at a time, frequently lift or carry objects weighing up to 10 pounds, and stand, walk and sit for approximately six hours each in an eight-hour workday. She can push/pull the same amount as she can lift and carry. The claimant can occasionally operate foot controls with the left lower extremity and frequently reach and handle. The claimant can occasionally climb ramps and stairs and occasionally stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffolds. The claimant

> will need to be able to change positions every 30 minutes from sitting to standing/walking. The claimant will not be off task when changing positions.

Tr. 21. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a cashier, and, in the alternative, could perform other jobs existing in significant numbers in the national economy. Tr. 26-28. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 28.

Plaintiff raises two primary arguments on appeal: (1) that the ALJ erred at step three in analyzing whether Plaintiff's impairments met or medically equaled Listing 1.04A; and (2) that the ALJ's RFC determination was unsupported by substantial evidence. Each argument lacks merit for the reasons discussed below.

Plaintiff's first argument relates to the ALJ's evaluation of Listing 1.04. ECF 14 at 9-23. The ALJ's analysis reads as follows:

> Consideration has been given to listing 1.04, however the requirements of this listing have not been satisfied. In making this assessment, the undersigned has also taken note of Acquiescence Ruling 15-1(4) and *Walker v. Colvin* (Civil Action No. CBD-15-2293). In making this assessment, the undersigned notes that the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04.
>
> Specific consideration has been given to listing 1.04(A). The undersigned notes that while the claimant's pain management physicians noted a diagnosis of lumbar radiculopathy, the most recent May 2016 MRI specifically noted that there was no nerve root impingement (Exhibit B9F & B21F). Moreover, even with this diagnosis, listing 1.04 is not met, as there is no 12-month period where the claimant's spinal disorder caused nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). In making this assessment, the undersigned notes that there is no evidence that the claimant experienced motor loss and that physical examination findings from the last year documented no abnormalities upon straight leg raise testing (Exhibits B7F & B21F).

Tr. 21. Plaintiff contends that the ALJ erred in three respects in his step three discussion: (1) by relying on Plaintiff's 2016 MRI to conclude that the record did not establish nerve root compression; (2) that the ALJ found the record devoid of evidence of motor loss; and (3) that the ALJ failed to apply Acquiescence Ruling 15-1(4) by limiting his review to the twelve months prior to his decision. ECF 14 at 12-13.

To satisfy Listing 1.04A, a claimant must show that her disorder of the spine results in a compromise of the nerve root or the spinal cord, as well as:

> [e]vidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, [4] positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04A. Although the ALJ found that Plaintiff had not satisfied the threshold requirement of establishing compromise of the nerve root or spinal cord for Listing 1.04, he continued his analysis and explained that, even if Plaintiff had satisfied the threshold requirement, she did not meet Listing 1.04A. Tr. 21. For support, the ALJ noted that there was "no evidence that the claimant experienced motor loss and that physical examination findings from the last year documented no abnormalities upon straight leg raise testing." *Id*.

The Commissioner argues that the ALJ correctly found that Plaintiff had not established the threshold requirement of Listing 1.04 and that, even if the ALJ erred in his conclusion that Plaintiff did not establish compromise of a nerve root or the spinal cord, any error is harmless because Plaintiff does not meet all the criteria in Listing 1.04A. ECF 17-1 at 4-6.

The Fourth Circuit has suggested that harmless error does not apply to an ALJ's inadequate step three analysis. *Fox v. Colvin*, 632 F. App'x 750, 755 (noting that "[The Court] cannot begin to engage in a 'meaningful review' when there is nothing on which to base a review."). However, remand is not warranted "in circumstances where it is clear from the record which listing or listings . . . were considered" and the court can still "readily determine whether there was substantial evidence to support the ALJ's Step Three conclusion." *Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986); *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002). Here, the ALJ identified Listing 1.04A, correctly listed the requirements to meet the listing, and applied the record to the requirements. Tr. 21. Therefore, his step three analysis was not so inadequate that the Court cannot review it.

Regarding Listing 1.04's threshold requirement, Plaintiff contends that the ALJ erred in relying on an MRI study to find that she lacked the requisite nerve root compression, and that her diagnosis of radiculopathy satisfies the requirement. ECF 16-18. The ALJ acknowledged Plaintiff's diagnosis of radiculopathy. Tr. 21. The Fourth Circuit has noted that "[r]adiculopathy is a disease of the nerve roots" and "[n]erve root compression is a form of radiculopathy." *Hays v. Sullivan*, 907 F.2d 1453, 1457 nn.4-5 (4th Cir. 1990); *see also Walker v. Colvin*, CBD-15-2293, 2016 WL 8669936, at *4 (D. Md. July 15, 2016) (noting that "radiculopathy is defined as 'compression of the nerve root'"). Furthermore, Plaintiff points out that Listing 1.04A does not require medical imaging to establish evidence of nerve root compression. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04, *with* § 1.04B-C. However, even if the ALJ erred in relying on the results from an MRI study to find that Plaintiff lacked nerve root compression, the error is harmless

because the ALJ continued his analysis to explain that Plaintiff did not meet all of the criteria of Listing 1.04A.

To meet a listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 391 (D. Md. 2000) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). The claimant bears the burden of proof at the first four steps of the sequential evaluation, including the listing analysis at step three. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that the burden rests with the claimant, through the first four steps of the sequential evaluation, to present evidence establishing disability during the relevant period). In this case, Listing 1.04A requires, as two of the four elements, motor loss and positive straight-leg raise tests. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04. Here, the ALJ found that "there is no evidence that the claimant experienced motor loss and that physical examination findings from the last year documented no abnormalities upon straight leg raise testing." Tr. 21.

Plaintiff argues that the record demonstrates that she met the motor loss requirement. ECF 14-1 at 18-19 (citing Tr. 480, 606, 654). To establish motor loss, a claimant must show muscle weakness "accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04A. The orthopedic consultative examination on which Plaintiff relies to show sensory or reflex loss contains the following notes: "decreased sensation to light touch," "Deep tendon reflexes are 1+," and "Muscle strength is 5/5 . . . except for left hip flexion which she is unable to do because of pain in the lower lumbar area." Tr. 654. While Plaintiff contends that the ALJ ignored this evidence, ECF 14-1 at 19, the ALJ discussed the orthopedic consultative examination in his RFC analysis, Tr. 25. The report does not undermine the ALJ's finding that Plaintiff did not experience Listing 1.04A's definition of motor loss, and Plaintiff does not identify other evidence in the record to support muscle weakness with sensory or reflex loss.

Lastly, Plaintiff correctly points out that the ALJ erred in limiting his step three review of Plaintiff's straight leg raise tests to the twelve-month period prior to his decision. ECF 14-1 at 20-22; *see Radford v. Colvin*, 734 F.3d 288, 294 (holding that "Listing 1.04A requires a claimant to show . . . that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months."); 20 C.F.R. § 404.1509. However, Plaintiff has not persuasively shown that the ALJ's error mandates remand. Plaintiff cites to several positive straight-leg raising tests in her medical history, and the ALJ acknowledged positive straight-leg raise tests in his RFC discussion, Tr. 23, but those records do not indicate that the tests were performed in both the sitting and supine positions, ECF 14-1 at 21 (citing Tr. 446, 476, 526, 558); ECF 20 at 3 (citing Tr. 509, 497). Listing 1.04A requires that a claimant show, "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)" to assess disability. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04; *see, e.g.*, *Bishop v. Colvin*, Civil Action No. 14-4068-CM; 2015 WL 5472494 at *5 (D. Kan. Sept. 17, 2015) ("While there is evidence of positive straight leg raise tests, most do not specify plaintiff's posture. The two positive tests that do specify posture were performed in the seated position. Thus, there is no evidence that any straight leg raise tests were conducted in the supine position. Without this evidence, plaintiff cannot show that he met all of the requirements of Listing 1.04A."); *Fripp v. Colvin*, Civil Action No. 9:14-0410-MGL-BM, 2015 WL 3407569 at *5 (D.S.C. May 27, 2015)

(noting that a positive straight leg raising test without an indication of whether the test was both sitting and supine does not suffice to establish the requirements of Listing 1.04A "and that alone is fatal to his claim"); *Martin v. Colvin*, Civil Action No. 1:12-CV-o62-BL, 2013 WL 3155939 at \*5 (N.D. Tex. June 21, 2013) ("Although Plaintiff correctly notes that Dr. Mehta reported positive straight-leg raising tests, the medical evidence of record does not indicate positive tests, both sitting and supine . . . The lack of positive straight-leg raising tests in both the supine and sitting positions demonstrates that the Plaintiff has failed to provide and identify medical signs and findings that support all criteria of Section 1.04 of the Listing of Impairments.") Accordingly, Plaintiff has not shown that Listing 1.04A is met, so any other error in the ALJ's Listing 1.04A analysis is harmless.

Plaintiff next argues that the ALJ's RFC determination was not supported by substantial evidence because (1) the ALJ did not adequately explain how Plaintiff "[would] not be off task when changing positions," and (2) the ALJ "grossly mischaracterized the evidence of record in an effort to portray Plaintiff as not a credible source of her pain limitations." ECF 14-1 at 25. I find that the ALJ's RFC analysis was detailed, clear, and well-supported by citations to the record.

Regarding Plaintiff's limitations in standing and sitting, the ALJ found Plaintiff "[would] need to be able to change positions every 30 minutes from sitting to standing/walking," and that she "[would] not be off task when changing positions." Tr. 21. Plaintiff cites to two reports in the record to support her assertion that changing positions requires extra time. ECF 14-1 at 25 (citing Tr. 481-82, 607). The ALJ specifically discussed the report from physical therapist, Kristen McMahon, opining that Plaintiff "would need frequent breaks during the day to change positions due to pain." Tr. 25 (citing Tr. 481-82). The ALJ gave this report "little weight" because a physical therapist is not an accepted medical source under Social Security law; McMahon did not have a treating relationship with Plaintiff; McMahon found Plaintiff to be more limited than Plaintiff alleged; and her assessment was internally inconsistent and not supported by the overall record. Tr. 25 (noting, for example, that McMahon observed Plaintiff sit for 25 minutes while filling out paperwork but opined that Plaintiff could only sit for 10 minutes in an eight-hour workday). Plaintiff also cites to a physical therapy note that reports Plaintiff's "significant difficulty with supine to sit transfers." Tr. 607. However, Plaintiff does not explain how the transition from lying down to sitting is relevant to her work-related functioning. Plaintiff's arguments regarding her ability to change positions do not undermine the substantial evidence upon which the ALJ based his findings.

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. Plaintiff first asserts that "the ALJ grossly mischaracterized evidence of record in an effort to portray Plaintiff as not a credible source of her pain limitations." ECF 14-1 at 25. This argument essentially takes issue with the ALJ's determination that Plaintiff's subjective complaints about her symptoms were not entirely credible. Plaintiff claims that the ALJ "ignored other objective evidence in this case supporting Plaintiff's limitations from pain, such as the numerous instances of weakness in her bilateral Hip Flexors, Ankle Dorsiflexors, Ankle Plantarflexion, Knee Extensors, Knee Flexors, and Hip Abductors." ECF 14-1 at 26 (citing Tr. 480, 606, 654). However, the ALJ plainly agreed that Plaintiff's impairments could reasonably be

expected to cause her alleged symptoms, but nevertheless he did not find her statements concerning the intensity, persistence, and limiting effects of those symptoms to be entirely credible. Tr. 22. In support of his determination, and in accordance with Social Security regulations, the ALJ cited to inconsistencies between Plaintiff's complaints and (1) her reports to treating sources that her pain was stable, (2) her activities of daily living, and (3) her routine and conservative course of medical treatment. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (setting forth factors relevant to the ALJ's credibility analysis). Plaintiff has not cited any evidence undermining the ALJ's analysis of her credibility, and I thus find that the ALJ provided substantial evidence in support of his credibility evaluation.

Plaintiff next argues that the ALJ erred by referring to Plaintiff's pain treatment as "routine and conservative." ECF 14-1 at 26. Plaintiff cites to *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017) for support. In *Lewis*, the Fourth Circuit held that the ALJ improperly characterized a claimant's treatment as "conservative" where her medical conditions required powerful analgesics, epidural injections, supraspinatus nerve blocks, radiofrequency ablation of her supraspinatus nerve, and multiple surgeries, including the removal of a rib to alleviate pain. *Id.* at 869. Here, the ALJ noted that Plaintiff's pain management consisted of medication and three lumbar ESI injections.[1] Tr. 23. The ALJ further noted that Plaintiff had no side effects from the medication, that her pain was adequately controlled, and that "[t]here was no evidence of progression towards more significant modalities." *Id.*; *see, e.g.*, Tr. 496 ("patient denies adverse effects of the medications, and reports improved ability to accomplish various activities of daily living"), 714 (Plaintiff "remains stable and managed on current pain med regimen"), 731, 737, 756 (noting that Plaintiff's pain management plan was to "continue current medications" and that "there are no side effects noticed and no sign of addiction").

Plaintiff also asserts that the ALJ "rejected the opinions of her treating health care providers." ECF 14-1 at 26. Plaintiff does not specifically identify Michelle Brown, but she must be to whom Plaintiff refers because the only medical opinion from a treating source in Plaintiff's record is from Michelle Brown. The ALJ thoroughly discussed Michelle Brown's opinion and gave it "little weight" because it was inconsistent with her treatment notes. Tr. 24. Plaintiff takes issue with the ALJ's conclusion that Plaintiff's "physical examination findings were overwhelmingly normal," and contends that the ALJ improperly "castoff without explanation" abnormal examination findings. ECF 14-1 at 26 (quoting Tr. 24). The ALJ noted Plaintiff's abnormal examination findings, including tenderness and pain with range of motion, but permissibly found that those abnormalities did not support the extent of the opined limitations. Tr. 24. The ALJ also noted that Plaintiff's "overall primary care records document routine monitoring of the claimant's health with no documentation of any significant physical abnormalities." Tr. 23.

This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence.

---

[1] To the extent Plaintiff is arguing that a prescription for Oxycodone necessitates a finding of disability, ECF 14-1 at 26 ("Plaintiff's need for such strong narcotic pain medication and multiple injections in her spine is highly probative evidence that her pain is both real and disabling"), her assertion is unfounded.

*See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 645, 640 (7th Cir. 1987)). Here, the ALJ adequately supported his findings with substantial evidence.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 14, is DENIED, and Defendant's Motion for Summary Judgment, ECF 17, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

                              Sincerely yours,

                              /s/
                            Deborah L. Boardman
                            United States Magistrate Judge